Mr. Justice Hunt
delivered the opinion of the court:
The claimant and Colonel Potter, a quartermaster in the *77 United States Army, on the 27th of March, 1865, entered into a written agreement, whereby it was agreed that the claimant “ shall receive at any time, in any of the months from May to September, inclusive, during the year one thousand eight hundred and' sixty-five, from the officers of the Quartermaster Department at Forts Leavenworth and ltiley, in the State of Kansas, and the town of Kansas, in the State of Missouri, all such military stores and supplies as may be turned over to him for transportation, in' good order and condition, by the officer or agent of the Quartermaster Department, at any or all of the above-named points or places, and transport the same *
* * to the officer or agent of the Quartermaster Department on duty, or designated to receive them, at Fort Union, in the Territory of New Mexico, or any other depot that may be designated in that Territory.”
It was agreed by the eleventh article of that contract that claimant “ shall transport all the military stores and supplies for which the Quartermaster Department may require transportation by contract, on the route specified by this agreement, during the year one thousand eight hundred and sixty-five, provided the weight of such military stores and supplies shall not exceed in the aggregate fifteen million pounds; yet nothing herein shall be so construed as to forbid or prevent the United States from using its own means of transportation for such service whenever it may be deemed advisable to do so.”
Under this agreement stores were furnished to the claimant by the Quartermaster Department to the amount of over fourteen million pounds, for the transportation of which he was paid. The claimant was prepared with the means of transportation, and ready to transport the remainder of the fifteen million pounds which under the contract he was bound to carry ; but it was not furnished to him for transportation.
On the 29th of September, 1865, Colonel Morgan, commissary of subsistence at Fort Leavenworth, entered into a contract with Fuller & Tiernan to deliver at Fort Union eighteen thousand bushels of corn on or before the 20th of December, 1865.
The essential parts of that contract are in the words following, viz:
“ That the said parties of the second part agree to deliver at Fort Union, in the Territory of New Mexico, eighteen thousand bushels of shelled corn, of the best quality, well sacked in new *78 gunny-sacks, securely sewed with linen twine; said corn must be free from dirt, cobs, or other foreign matter, and must be either yellow or white, but not mixed in the sacks; to be delivered to the officer of the Subsistence Department at Fort Union, N. Mex., on or before the 20th day of December, 1865.
“ The parties of the second part agree that said corn shall be subject to the inspection, acceptance, or rejection of the officer receiving the same, and that if default shall be made by the said parties of the second'part, or either of them, in the time of delivery, or any of the terms of this contract, the party of the first part, or any person acting for him on behalf of the United States, shall have power to purchase the corn in open market, and the said parties of the second part, and their sureties, shall be charged with the difference between the cost thereof and the price hereinafter stipulated to be paid to the said parties of the second part.
“ For and in consideration of the faithful performance of the stipulations of this contract the said party of the first part agrees to pay, or cause to be paid, to the parties of the second part, at the office of the commissary of subsistence at Fort Leavenworth, Kansas, the sum of $8.54 for each and every bushel of corn delivered and accepted in accordance with the terms thereof, in such funds as may be provided by the Government for that purpose, payment to be made on vouchers issued and certified by the officer receiving said corn.”
The claimant insists that the making of this contract by an officer of the United States, in September, 1865, and its performance, constituted a breach of his contract made with Colonel Potter in March of the same year. He claims as damages the profit on the transportation of about 800,000 pounds of corn, which he insists should have been furnished for transportation on his contract, instead of being purchased and delivered under the contract with Fuller & Tiernan.
The Court of Claims held adversely to the petitioner, and dismissed his claim. He now appeals to this court.
» It can hardly be denied by the most zealous advocate that the two contracts before us differ essentially in their nature and form. The contract made with the claimant is a contract for the transportation of corn, at a price fixed, and in quantity not to exceed 15,000,000 pounds. The sole duty of the claimant under this contract was to carry and deliver the corn. He did *79 not purchase it nor own it; be had nothing to do with its value or quality, and could neither make nor lose by a fluctuation in the value of the corn.
The later contract with Fuller & Tierman, on the other hand, is strictly a contract for the purchase of 18,000 bushels of corn, to be delivered at a place and within a time named and at a price specified, to be paid on the delivery and acceptance of the corn. In this case the corn is the property of Fuller & Tiernan until delivered. They purchase it; they own it. If the price of corn in the market varies essentially, they will make a profit or be losers, according as the direction of the variation shall he. Their contract is to furnish the corn at Fort Union, N. Mex., and they are at liberty to obtain it from any source they choose. They have no claim for payment until delivery, and the United States have no ownership of the corn until delivery and payment.
The foundation, however, of the claimant’s demand rests upon the identity of these dissimilar contracts. Having contracted to deliver to him for transportation all the corn of which the Quartermaster Department required transportation from Fort Leavenworth to Fort Union, he insists that this contract is violated by a purchase by the Subsistence Department of the United States, made at Fort’ Leavenworth, of corn to .be delivered by the seller of the same at Fort Union. This view cannot be sustained; there is not only not an identity, but there is not a similarity, between the contracts. The making of the latter contract, and its performance, was not a breach of the former.
It is suggested in the claimant’s brief that the proceeding of the United States in making the contract with Fuller & Tiernan was a device unfairly to evade the performance of the claimant’s contract. No such fact is found by the Court of Claims, and their findings of fact are taken by us to be the facts in the case. We discover nothing in the case that would have justified th# Court of Claims in coming to such conclusion. We should at all times be slow to sustain such an imputation upon the good faith of the Government.
The claimant makes comqflaint that the quartermaster at Fort Leavenworth lent Fuller & Tiernan a quantity of corn to be used by them in performance of their contract of salé with the Commissary of Subsistence; that the loan of corn was illegal, *80 the title still remaining in the United States ; and that this fact furnishes evidence that the second contract was a device and a pretense only. We have only to say, ou this branch of the ease,thattheclaimantisnot invested with authority to supervise the transactions of the different Departments of the Government. Whether the Commissary of Subsistence had authority to malte the contract with Fuller, whether there was an irregularity in the loan of the corn to Fuller, and what was the motive of these dealings, are matters to be investigated by the War Department. They cannot be challenged by the claimant. He rests his claim for damages upon the making and performance of Fuller’s contract. That contract has not been repudiated or objected to, so far as we know, by the proper authority. The record contains no .evidence that any of the transactions are the subject of censure by the Government.
The supplies contracted to be transported by the claimant were those of the Quartermaster Department, that is, the supplies to be used for and by the Army. The corn purchased by the Commissary of Subsistence was sent to New Mexico, not for the Army, but to feed the Mexicans or Indians. The duties of the Quartermaster Department and of the Department of Subsistence are separate and distinct. The Departments are managed by different officers, whose authority is confined to the matters connected with their Departments.
The contract to transport, in the case before us, relates to supplies for the Quastermaster Department. The arrangement which is set forth as a violation of that contract related to supplies needed by the Commissary of Subsistence, a different subject entirely.
The duty of the Commissary Department, in general terms, is to feed the Army, to provide supplies for its subsistence. Transportation is not understood to be among its duties. That office belongs to the Quartermaster Department. What the Commissary provides to feed the Army, it is the duty of the Quartermaster to transport to such points as may be needed. Hence, in the case before us, it was in the ordinary course of business that, the contract for transportation being already made, and further supplies being needed, the purchase of the same should devolve on the Commissary Department.
The judgment of the Court of Claims must be affirmed.